# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| Respondent, | ) | ID No. 2105001642 |
| | ) | |
| v. | ) | |
| | ) | |
| LARRY KNAUER, JR., | ) | |
| Movant. | ) | |

Submitted: February 21, 2022

Decided: March 29, 2022

*Upon Defendant's Motion to Suppress*

**DENIED**

## MEMORANDUM OPINION AND ORDER

Rodney Don Sweet, Esquire, 32901 Mount Pleasant Road, Laurel, DE 19956; Attorney for Movant.

Michael Tipton, Esquire, Deputy Attorney General, Department of Justice, 13 The Circle, Georgetown, DE 19947; Attorney for Respondent.

**KARSNITZ, RJ.**

## PROCEDURAL BACKGROUND

Defendant Larry E. Knauer, Jr. ("Knauer," "Defendant" or "Movant") is charged with four offenses: Driving a Motor Vehicle Under the Influence of Alcohol and/or Drugs ("DUI") (Third Offense), Failure to Have Insurance Identification in Possession, Failure to Obey a Traffic Control Device, and Improper Lane Change. Trial is scheduled for May 5, 2022.

On January 18, 2022, Movant filed a Motion to Suppress Evidence (the "Motion"). The Motion requested an evidentiary hearing and asserted six grounds for suppression of all evidence relating to the stop of Movant's vehicle and Movant's arrest, summarized as follows:

(1) No probable cause to arrest Movant for DUI;

(2) No reasonable articulable suspicion to perform a traffic stop of Movant's vehicle and search of vehicle;

(3) Improper questioning of Movant while in custody without *Miranda*[1] warnings;

(4) Inadequate evidence with respect to blood draw;

(5) Improper reference to two prior DUIs in Pennsylvania; and,

(6) Invalid chain of custody with respect to blood evidence.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

On February 21, 2022, the State of Delaware (the "State") filed its Response to the Motion.

This is my ruling on the Motion.

## FACTS

On May 4, 2021, a witness reported to the Delaware State Police that the witness observed Movant passed out behind the wheel of a motor vehicle as it rolled into a row of trees, eventually crashing into a tree.

Trooper Wilson of the Delaware State Police ("Wilson") responded and found Movant unresponsive behind the wheel of the vehicle. Wilson observed that Movant was sweaty and did not answer questions. Shortly thereafter, emergency medical services arrived to treat Movant who, although at first combative, eventually got into an ambulance and was transported to the hospital. No law enforcement officers accompanied Movant during his trip to the hospital.

Wilson took an inventory of the contents of the vehicle and noted an unopened beer and nearly empty bottle of vodka.

While Movant was on the way to the hospital, Wilson obtained a search warrant to obtain a sample of Movant's blood. He then went to the hospital where movant was being treated and obtained a sample of Movant's blood. Movant has no recollection of the incident.

## DISCUSSION

As a preliminary matter, I note that grounds (4) and (6), relating to the facts surrounding the blood draw itself, and the chain of custody of the blood which was drawn, are evidentiary matters for trial, and not appropriate for a suppression motion. With respect to Ground (5), Wilson stated in his request for a search warrant to obtain a sample of Movant's blood that a "Larry E. Knauer" had two prior DUI convictions in Pennsylvania. Movant argues that the magistrate could not tell whether this was Movant, Larry E. Knauer, Jr., or his father, Larry E. Knauer, Sr. I find that the reference to "Larry E. Knauer," although not perfect, was sufficient for purposes of the blood draw warrant. Moreover, there is a plethora of other evidence supporting the blood draw warrant, so any error is harmless. Thus, I will focus on Grounds (1), (2), and (3).

## Probable Cause to Arrest Movant for DUI

Movant argues that Wilson did not have probable cause to arrest him for DUI. The State has the burden of establishing by a preponderance of evidence that Movant's arrest was supported by probable cause.[2] "Probable cause exists when the officer possesses information which would warrant a reasonable man

---

[2] *State v. Anderson,* 2010 WL 4056130, at *3 (Del. Super. Oct 14, 2010).

to believe that a crime has been committed."[3] "To establish probable cause that the defendant was driving under the influence, the police need only present facts suggesting, in the totality of the circumstances, that a fair probability exists that the defendant had committed a crime."[4] A traffic violation combined with an odor of alcohol, standing alone, do not constitute probable cause to arrest the driver for a DUI offense.[5] On the other hand, where the defendant *caused* a traffic accident, and the investigating officer personally smelled an odor of alcohol on the defendant's breath, probable cause was found to exist to believe that the defendant was under the influence of alcohol at the time of the accident, and evidence of alcohol consumption could be obtained from a test of the defendant's blood.[6]

In this case, Wilson found that Movant had crashed into a row of trees, was passed out behind the wheel of his vehicle, and was unresponsive and drenched in sweat. A witness had observed Movant passed out behind the wheel of his vehicle during the collision. Wilson found an unopened can of beer and a nearly empty bottle of vodka in the vehicle.

---

[3] *State v. Laface,* 2016 WL I 637960, at *3 (Del. Super. March 3, 2016) *citing State v. Bells,* 2015 WL 2066602, at * 1 (Del. Super. Apr. 1, 2015).
[4] *Miller v. State,* 4 A.3d 371 (Del. 20 I 0).
[5] *Esham v. Voshell,* 1987 WL 8277 (Del. Super. March 2, 1987).
[6] *State v. Rybicki,* 2014 WL 637004 (Del. Super. Jan. 14, 2014).

I find that, based on the totality of the circumstances, sufficient facts were presented in this case to support the fair probability that Movant had been driving under the influence. Wilson had probable cause to arrest Movant, based on Wilson's training and experience.

## Reasonable Articulable Suspicion for Stop and Search

Movant argues that the stop of his vehicle was unconstitutional because the officer did not possess a reasonable articulable suspicion that a crime was or was about to be committed. However, this Court has held that an officer's investigation of an automobile *already* stopped does not constitute a seizure.[7] In fact, the Court held that the trial court (the Court of Common Pleas) erred by holding that the officer needed reasonable articulable suspicion to approach the defendant's vehicle.[8]

The Delaware Supreme Court has also held that "it is well established that certain police questioning of individuals in parked automobiles does not constitute a Fourth Amendment seizure."[9]

In this case, Wilson encountered Movant *after* he had crashed his vehicle.

---

[7] *State v. Arterbridge,* 1995 WL 790965 at *3 (Del. Super. Dec. 7, 1995).
[8] *Id* at *4.
[9] *Robertson v. State,* 596 A.2d 1345, 1351 (Del. 1991).

Movant was not even aware of Wilson's presence until Wilson woke him up. Movant's own actions caused his vehicle to stop.

Assuming *arguendo* that Wilson needed to have a reasonable and articulable suspicion to perform a traffic stop of Movant, in my view he had it.

The Fourth Amendment to the United States Constitution and the Delaware Constitution protect individuals from unreasonable searches and seizures.[10] The Fourth Amendment permits brief investigative stops, such as the traffic stop in this case, when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity."[11] The "reasonable suspicion" necessary to justify such a stop "is dependent upon both the content of information possessed by police and its degree of reliability."[12] Although a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause.[13] Once a reasonable suspicion of drunk driving arises, "[t]he reasonableness of the officer's decision to stop a suspect

---

[10] U.S. Const. amend. IV; Del. Const. Art. I, § 6.
[11] *United States v. Cortez,* 449 U.S. 417-418 (1981).
[12]*Alabama v. White,* 496 U.S. 330 (1990).
[13] *United States v. Sokolow,* 490 U.S. 7 (1989).

does not turn on the availability of less intrusive investigatory techniques."[14]

In Delaware, the court can "combin[e] objective facts with such an officer's subjective interpretation of those facts."[15]   When considering the objective facts, the limited consideration of an officer's subjective thoughts allows the court to accord weight to an officer's training and experience in detecting criminal activity.[16] In other words, the objective facts are viewed through the lens of a reasonable, trained police officer.[17]

The Delaware Supreme Court has held that an anonymous tip containing specific details of a vehicle, its location, and the driver's illegal actions was sufficiently reliable to establish reasonable suspicion.[18]   In this case, a witness reported that an individual was passed out in the driver's seat of a vehicle which had just crashed into a row of trees and gave the location of the vehicle.  Wilson observed Movant passed out behind the wheel and his vehicle crashed into the trees.   Based on the witness' information as well as Wilson's personal observations, in my view Wilson had a reasonable articulable suspicion that Movant was driving under the influence.

---

[14] *Id.* at 11.
[15] *Jones v. State,* 745 A. 2d 861 (Del. 1999).
[16] *Lopez-Vazquez v. State,* 956 A.2d 1287 (Del. 2008).
[17] *West v. State,* 143 A.3d 712, 716-17 (Del. 2016).
[18] *Bloomingdale v. State*, 842 A.2d 1212 (Del. 2004).

Even if Wilson's actions constituted a seizure, in my view it was justified under the "community caretaker" or "public safety" doctrine, which is an exception to the warrant requirement. Delaware, like many other jurisdictions, recognizes this doctrine, which recognizes that the role of police is not limited to the detection and prevention of criminal activity, but also encompasses the role of ensuring the public safety and the welfare of citizens.[19]

In this case, the Delaware State Police received a report that an individual was passed out and involved in a collision with trees. Not only did Wilson respond to the location; he also contacted emergency medical services to respond as well. Wilson was fulfilling his duty to ensure the safety and welfare of Delaware citizens.

### *Miranda* **Violation**

Movant argues that Wilson unconstitutionally[20] questioned Movant after Movant was in custodial detention without reading Movant his rights under *Miranda v. Arizona*.[21] *Miranda* procedural safeguards are expressly limited to interrogation in a custodial setting.[22] However, "custodial interrogation" is not

---

[19] *Williams v. State,* 962 A.2d 216, 218 (Del. 2008).
[20] U.S. Const. amend. V.
[21] 384 U.S. 436 (1966).
[22] *Id*. at 445.

limited to a formal police interview or questioning after an arrest.[23] Custody is

defined as "otherwise depriving [a defendant] of his freedom of action in any

significant way"[24] or whether "under the totality of circumstances, a reasonable

man in the suspect's position would feel a restraint on his freedom of movement

fairly characterized as that 'degree associated with a formal arrest' to such an

extent that he would not feel free to leave."[25] The initial determination of custody

depends on the "objective circumstances of the interrogation, not on the subjective

views harbored by either the interrogating officers or the person being

questioned."[26]

The Delaware Supreme Court has held that initial investigatory statements

do not require *Miranda* warnings:

> [T]he practicalities of effective police investigation at the scene,
> immediately after the commission of a crime, require the police to
> have an unrestricted scope of general interrogation as to those found
> there. It is unreasonable to expect the police to perform their initial
> investigatory function at the scene of the crime under the restrictions
> of the *Miranda* rules. Neither the *Miranda* case, nor its progeny,
> require such restriction and we decline to extend the *Miranda* rules
> to the routine, initial, on-scene investigation by the police. To do so
> would amount, in our opinion, to an unwarranted "constitutional

---

[23] *Hammond v. State,* 569 A.2d 81 (Del. 1989).

[24] *Miranda,* 384 U.S. at 445.

[25] *Marine v. State,* 607 A.2d 1185, 1193 (Del. 1992) (citing *U.S. v. Phillips,* 812 F.2d 1355, 1360 (11th Cir.1987); *see California v. Beheler,* 463 U.S. 1121, 1125 (1983); *De.Jesus v. State,* 655 A.2d 1180, 1190 (Del. 1995)).

[26] *De.Jesus v. State,* 655 A.2d 1180, 1190 (Del. 1995) (citing *Stansbury v. California,* 511 U.S. 318, 323 (1994)).

straight-jacket" on law enforcement. The *Miranda* rules are first applicable at the accusatory stage or during custodial interrogation.[27]

The United States Supreme Court has similarly held that "a person temporarily detained for an ordinary traffic stop is not 'in custody' for the purposes of *Miranda.*"[28] In so holding, the Court noted that a routine traffic stop is usually temporary and brief, is usually in a public place, and usually involves only one or two officers, making it less police-dominated than typical custodial situations.[29] In Delaware, questioning during a routine traffic stop, even when the defendant is placed in the back seat of the patrol car, has been held to be non-custodial for the purposes of *Miranda* warnings.[30] Investigation at the scene immediately following an accident is considered routine initial investigation, and such a finding can even exist where questioning continues at the hospital. There is no "bright line" test as to whether an interrogation that occurs in a hospital is custodial; rather, there is a case-by-case determination based on the unique facts which are presented in a particular case.[31]

---

[27] *Laury v. State* 260 A.2d 907, 908 (Del. 1969).

[28] *Berkemer v. McCarty,* 468 U.S. 420, 441-42 (1984).

[29] *Id.*

[30] *Fuentes v. State,* 2002 WL 32071656, at *2 (Del. Super. Dec 30, 2002) (citing *State* v. *Bonner,* 1995 WL 562162, at *3 (Del. Super. Aug. 30, 1995).

[31] *Hammond* v. *State,* 569 A.2d 81, 93-94 (Del. 1990); *see DeJesus* v. *State,* 655 A.2d 1180, 1191 (Del. 1995).

The Delaware Supreme Court has held that a defendant is not in custody for the purposes of *Miranda* when he is interviewed in his hospital room and his freedom of movement is restrained by his own physical condition, and not by police action.[32] In the *DeJesus* case, the police never handcuffed the defendant, never placed a guard outside his door, and never attempted to physically restrain him in any way. Further, the hospital eventually discharged the defendant, and he left unhindered.

This Court has held that a defendant is not in custody for the purposes of *Miranda* where she was not formally arrested, and her freedom was limited only by her physical incapacity, not police compulsion.[33] The police officer was unable to obtain statements at the scene because the persons involved were being treated by medical personnel and transported to the hospital. Upon arriving at the hospital, the officer made contact to make his own assessment of the defendant and to determine what happened at the scene of the collision. The officer was the only officer in the room and people were freely moving about the area.

Similarly, in this case, Movant was not in police custody while at the

---

[32] *DeJesus v. State,* 655 A.2d 1180, 1191 (Del. 1995).
[33] *State* v. *Mauk,* 2014 WL 4942177, at *4 (Del. Super. Sept. 29, 2014).

hospital. Movant was transported to the hospital by emergency medical services unaccompanied by any law enforcement officer. Wilson sought a blood search warrant while Movant was transported and then responded to the hospital in order to obtain a sample of Movant's blood. Movant was not in handcuffs or under the constant presence of law enforcement. In my view, these facts do not establish a custodial situation for purposes of the *Miranda* warnings.

## CONCLUSION

For the reasons stated above, I **DENY** Defendant's Motion to Suppress.

**IT IS SO ORDERED.**


/s/ Craig A. Karsnitz


cc:  Prothonotary